UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PETER RINALDI,                                        :
               Plaintiff,            :

            v.                                    :

                                    **ORDER**

NICE, BARAK EILAM, NICE SYSTEMS, INC.,  :
ACTIMIZE, PAUL MILLS, CHRISTINE                     19-CV-424 (LGS) (KNF)
BONAMARTE, RICHARD MALISH,                  :

              Defendants.          :
------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

      The plaintiff proceeding pro se commenced this action for damages asserting wrongful termination of his employment, employment discrimination based on age, retaliation and non-payment of wages. The plaintiff served non-party "SAP, SAP Success Factors, SAP Subsidiaries" with a subpoena, dated January 2, 2020, pursuant to Rule 45 of the Federal Rules of Civil Procedure, requiring that "SAP and its Subsidiaries" respond to certain interrogatories and provide information concerning the time period "from dates Sept 1st 2018 until Present Date." Docket Entry No. 137-2. On April 20, 2020, the Court denied the plaintiff's motion to compel SAP SuccessFactors Inc. ("SAP") to produce documents responsive to the plaintiff's subpoena because the plaintiff failed to comply with Local Civil Rule 7.1 of this court, since he did not submit "supporting affidavits and exhibits thereto containing any factual information and portions of the record necessary for the decision of the motion." Docket Entry No. 125.

      Before the Court is a renewed motion made by the plaintiff to compel SAP to produce documents in response to the plaintiff's subpoena. SAP opposes the motion.

1

## PLAINTIFF'S CONTENTIONS

The plaintiff contends that he seeks

"All Data" sent between NICE, NICE Systems, NICE Actimize & SAP Success Factors pertaining to Peter Rinaldi from Sep 1st, 2019 until present date regarding; [sic] at all times at which the 2018 Connect2Grow performance evaluation form was electronically accessed following Plaintiff's termination including who accessed the document, when it was accessed, and any revisions or modifications made.

According to the plaintiff, the evidence he requested is relevant because "SAP is the only firm that houses this data; this data is on WORM (write one read many) compliance servers and the server messages are indelible." The plaintiff asserts that he "would like to know why there are two different versions of the same SAP Success Factors review form. It is odd that the best piece of evidence that the Defense had was introduced after discovery was closed albeit with a derogatory admission which the Employee signed off on and could not see." The plaintiff requests all data transmitted between "NICE & subsidiaries & SAP Success Factors in human readable raw file format," including "all file headers, timestamps, metadata and [they] should not be redacted." Moreover, "[i]f a user is obfuscated by an identification number, a table should identify these users."

The plaintiff asserts that a document produced by the defendant after discovery closed is "called Connect 2 Grow review," and "[t]his form seemed to be altered and included the words, 'Is the employee currently on track for achieving 2018 objectives? Performance Progress: No.'" However, during discovery, the defendant produced a document "Connect 2 Grow" identical to the post-discovery document, except for the words "Is the employee currently on track for achieving 2018 objectives? Performance Progress: No," contained only in the post-discovery document. The plaintiff asserts that the assigned district judge allowed a subpoena to be served

2

"because this looked strange," and she ordered the defendant to file affidavits from individuals with personal knowledge attesting to: (1) "the information provided in the letter filed on November 18, 2019 (Dkt. No. 95) regarding the second production of Plaintiff's 2018 Connect 2 Grow performance evaluation form"; and (2) "all times at which the 2018 Connect 2 Grow performance evaluation form was electronically accessed following Plaintiff's termination, including who accessed the document, when it was accessed and any revisions or modifications made." According to the plaintiff, the defendants "never fully answered who accessed, who was able to access and what dates the Connect 2 Grow form was accessed."

In support of his motion, the plaintiff submitted his declaration with Exhibit A, "the first version of Connect 2 Grow document that was provided in June 2019 in Discovery by the Defendants," Exhibit B, "the second version of Connect 2 Grow that was provided after Discovery was closed on Nov 11th 2019 by the Defendants," Exhibit C, the motion to compel, and Exhibit D, the memorandum of law in support of the motion to compel.

## SAP'S CONTENTIONS

SAP asserts that the motion should be denied because: (1) it does not comply with Local Civil Rule 7.1(a) requiring "a supporting affidavit" and is procedurally defective; (2) the request for "All Data" is "overbroad, unduly burdensome, and irrelevant" to the litigation; (3) SAP's "production in response to the Subpoena already adequately resolves Plaintiff's inquiry"; and (4) "Plaintiff has already received from Defendants all information readily available to SAP Success Factors relating to his 2018 performance evaluation." S AP contends that the blanket request for "All Data" is "plainly overbroad and inadmissible" and its response explained the inquiry about the two different versions of the plaintiff's performance evaluation. SAP "software enables customers to configure 'role-based permissions,' limiting "access to one set of

3

users," such as the plaintiff, while providing "greater access to another set of users," such as a manager. According to SAP, the defendant's "explanation that Plaintiff would not have access to a 'manager view' version of his review that included his manager's 'on track' comments is accurate. This is the purpose for role-based permissions." According to SAP, the plaintiff has already received from the defendants all information readily available to SAP related to his 2018 performance evaluation: (i) the employer view; (ii) the manager view; and (iii) the audit trail. In the audit trail produced, the defendants recorded the steps of the plaintiff's "performance evaluation as it moved from stage to stage of the review process," and the audit trail feature of SAP's software "only captures certain data, including the 'last modified date' and the user who routed the review to the next stage. The audit does not capture '[w]ho made a change to data' within a particular stage or what specific changes were made." SAP asserts:

> If Defendants had moved Plaintiff's performance evaluation back from the "final form" to a "modify stage" after Plaintiff's termination, this would have been captured in the audit trail. Moreover, the literature explains that SAP SuccessFactors is currently "unable to report on further details" and its "Product Support cannot report on any data that is NOT already available in these standard [customer] reports."

Therefore, SAP asserts, it is unable to provide the plaintiff any additional "customer-facing information beyond what he already received from the Defendants." SAP contends that it does not maintain "All Data" regarding the plaintiff's performance evaluation, as contemplated by the subpoena and, at most, it could produce the same information the defendants already produced. SAP could also produce "the Change Audit Report," which: 1) "does not provide any additional substantive information"; and 2) the plaintiff "could obtain more easily from Actimize than from" SAP. The plaintiff asks SAP to produce data that SAP does not maintain.

In support of its opposition, SAP submitted: (a) a declaration by Sam Passman ("Passman"), SAP's "Vice President, Product Management, Cloud HCM PM – Talent"; and (b) a

declaration by its counsel, Matthew L. Elkin ("Elkin"), with Exhibit A, the amended complaint in this action, Exhibit B, the plaintiff's January 2, 2020 subpoena, Exhibit C, SAP's February 18, 2020 Responses and Objections to Plaintiff's Subpoena, and Exhibit D, the Court's April 20, 2020 order denying the plaintiff's motion to compel.

Passman states in his declaration that he "collected" the responsive documents produced to the plaintiff "at the direction of counsel" that include "training materials and product literature that explain the software's 'role-based permission' and audit trail functionality" and he is "familiar with them in the ordinary course of my duties with SAP." Passman states that SAP is a "provider of cloud-based human capital management ('HCM') software," and defendant Actimize, Inc. ("Actimize") is SAP's customer. Actimize pays SAP a licensing fee in exchange for access to the cloud-based software. Passman asserts that "Actimize configured the software as its 'Connect 2 Grow' human resources platform, and used it to manage its employee performance review process, including Plaintiff's 2018 performance evaluation." According to Passman, the "information entered into Actimize's SAP SuccessFactors system by Actimize personnel, including Plaintiff's 2018 performance evaluation and the audit trail associated with it, belongs to Actimize, not to SAP" and is deemed confidential information which SAP requires Actimize's authorization to access. Passman maintains that the "Change Audit Report feature tracks in a single spreadsheet the same information otherwise available in an employee performance evaluation and associated changes that are captured in the audit trail, *i.e.*, changes to the ratings, rating comments, or e-mailed feedback from the 'Get Feedback' tool." Passman states that the Change Audit Report does not track any information beyond what is already captured in the documents attached as exhibits to the plaintiff's subpoena, it only tracks that information in a different format. Passman asserts that the information available in a Change

5

Audit Report, like the performance evaluation and audit trail, can only be accessed with specific authorization from SAP's customers.

Exhibit C to Elkin's declaration shows that SAP: (1) responded to the plaintiff's subpoena by making general objections, including that "service was improper," "discovery is already closed," "the Defendants already have what Plaintiff is seeking," "much of the requested information is confidential" and "the Subpoena is in the form of a set of interrogatories," and asserted it would "treat the interrogatories as requests for the production of documents"; (2) produced certain documents "relating to the functionality of the Role Based Permissions and Audit Trail in SAP SuccessFactors' software"; and (3) informed the plaintiff that it "possesses an additional responsive document, a chapter from a confidential and proprietary internal training manual titled 'Performance Form Permissions Configuration,' which explains the foregoing in more detail," that would be produced only "if the parties enter into an appropriate Protective Order that will further insure the confidentiality of this document." Docket Entry No. 137-3.

## LEGAL STANDARD

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

"Every subpoena must . . . command each person to whom it is directed to do the following at a specified time and place: attend and testify; produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control; or permit the inspection of premises." Fed. R. Civ. P. 45(a)(1)(A)(iii). "At any time, on notice to the

commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i).

> On timely motion, the court for the district where compliance is required must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden.

> Fed. R. Civ. P. 45(d)(3)(A).

## APPLICATION OF LEGAL STANDARD

### *Procedural Defect*

SAP's assertion that the motion to compel should be denied for the second time on the procedural ground is rejected as meritless because SAP did not assert any prejudice from the plaintiff's procedural failure, and the Court finds none. Thus, denying the motion on the procedural ground is not warranted.

### *Merits*

The plaintiff's January 2, 2020 subpoena for production of documents served on SAP was accompanied by a letter, in which the plaintiff states that he has "a federal wrongful termination case" in this district and "[w]e need to examine the Connect 2 Grow reviews that were created with your Success Factors software on Plaintiff Peter Rinaldi." The subpoena includes "Definitions and Instructions" and "Interrogatories" explaining that the subpoena is accompanied by Exhibit A, "the first Connect 2 Grow review provided in Discovery in July 2019 by the Defense," Exhibit B, "the second altered Connect 2 Grow review provided in Discovery on Nov 14, 2019 by Defense," and Exhibit C, "a declaration by Hadas Reisbaum under penalty of perjury which explains the difference in Connect 2 Grow reviews." The plaintiff's subpoena includes twelve interrogatories, asking SAP to identify and explain certain information,

including the names of certain users, and to produce the following: (i) "all server messages that were sent to SAP servers that accessed the Connect 2 Grow form pertaining to Peter Rinaldi; including timestamp and sequence numbers assigned to messages"; and (ii) "all API server messages such as POST, GETS, DEL."

On February 18, 2020, SAP deemed the plaintiff's interrogatories to be document requests and objected specifically that the requests: (1) are "unduly burdensome" (request Nos. 1-10 and 12-13); (2) seek "trade secrets and other confidential and proprietary information" (request No.1); (3) are "vague and ambiguous" (request Nos. 4, 5, 7, 8 and 13); and (4) seek information that "can more easily be obtained from the Defendants" (request Nos. 2-13). In response to the plaintiff's request No. 2, SAP produced the following documents: (a) "relevant extracts from a customer training presentation 'SAP SuccessFactors Performance and Goal Management, Project Team Orientation (PTO) (HR820),' dated Q4 2019"; (b) "2075945 – Form Template Audit Functionality – Performance Management," described as a "customer training document [that] describes the functionality of the Audit Trail"; (c) "2075925 – Audit Trail and Routing History from Blue Info Icon or Info about this form – Performance Management," described as a "customer training document [that] describes the basic information that is displayed in the Audit Trail"; and (d) "2386619 – Audit Trail Action values and action on Form – Performance Management," described as a "training document [that] describes the common actions that the Audit Trail can show and the actions in which they come from."

SAP asserts in its memorandum of law that the plaintiff's request for "All Data" is "overbroad, unduly burdensome, and irrelevant to his lawsuit." Although SAP made both the general objection that the requests are "unduly burdensome," it also made specific objections to request Nos. 1-10 and 12-13, asserting they are "unduly burdensome." However, SAP did not

make a specific objection that any particular request is irrelevant or overly broad; rather, it asserted general blanket objections that the plaintiff's requests are "overbroad, unduly burdensome, and irrelevant to his lawsuit."  The Court rejects SAP's blanket general objections on the bases of relevancy and an overly broad scope and finds that SAP waived them because it did not make a specific objection(s) to any particular request(s), such as it made, for example, on the grounds of "unduly burdensome" and "vague and ambiguous," both of which it also asserted in the general objections section of its responses to the subpoena.  The Court finds that the plaintiff's requests are relevant, proportional to this action and narrowly tailored to information concerning only the plaintiff and his employment with the defendants during a short time period, from April 17, 2017, to November 30, 2018.

     Concerning SAP's objections that request Nos. 4, 5, 7, 8 and 13 are "vague and ambiguous," SAP failed to identify what term(s) in those requests is "vague and ambiguous."  In light of: (i) the plaintiff's detailed "Definitions and Instructions" section of the subpoena and his invitation that SAP contact him "if SAP has any questions"; (ii) SAP's failure to seek clarification from the plaintiff; and (iii) SAP's failure to identify in its opposition to the motion what term(s) in the plaintiff's requests is "vague and ambiguous," the Court finds that SAP's objections based on the ground "vague and ambiguous" are unsupported and meritless.

     SAP failed to make a timely motion to quash or modify the plaintiff's subpoena, pursuant to Fed. R. Civ. P. 45(d)(3), on the basis of undue burden or to protect "trade secrets and other confidential and proprietary information" or any other privileged or protected materials; thus, SAP's objections, based on those grounds, are waived.  In light of the plaintiff's narrowly tailored requests and SAP's failure to explain how any of the requests Nos. 1-10 and 12-13 is

9

"unduly burdensome," the Court finds that refusing to respond to the plaintiff's requests on the ground "unduly burdensome" is baseless and improper.

SAP also refused to produce documents in response to requests Nos. 2-13 on the ground that they seek information that "can more easily be obtained from the Defendants," relying on Passman's declaration that the plaintiff already received all information readily available to SAP relating to his 2018 performance evaluation. SAP concedes in its memorandum of law that responsive documents exist that SAP "could also produce," such as "the Change Audit Report," which it did not produce on the basis that the plaintiff "could obtain [it] more easily from Actimize." However, Passman is employed by SAP, not the defendants, including "Actimize," and he did not explain the source of his personal knowledge about the defendants or the defendants' conduct, including that: (a) "Actimize configured the software as its 'Connect 2 Grow' human resources platform, and used it to manage its employee performance review process, including Plaintiff's 2018 performance evaluation"; and (b) "[t]he information entered into Actimize's SAP SuccessFactors system by Actimize personnel, including Plaintiff's 2018 performance evaluation and the audit trail associated with it, belongs to Actimize." Although Passman asserts generally that: (i) "an employee may not have access to a 'manager view' version of his evaluation that included his manager's 'on track' comment"; and (ii) "[i]f an employer was to move an employee's performance evaluation back from the 'final form' to a 'modify stage' after-the-fact, this would be captured in the audit trail," he does not assert that circumstances (i) and (ii) occurred specifically in this case. Thus, asserting the general "purpose for role-base permissions" and that the audit trail "would capture" certain information in a hypothetical case is not sufficient to support SAP's refusal to respond to the plaintiff's requests. Moreover, Passman has no personal knowledge about what information, if any, the defendants

10

possess and can access or the ease with which such access and production to the plaintiff can be accomplished, and SAP failed to explain the relevance of the documents in the defendants' possession or the defendants' access to them to SAP's obligation to respond to the subpoena served on SAP under Rule 45 of the Federal Rules of Civil Procedure.

As discussed above, SAP's objections to the plaintiff's subpoena are waived and overruled. The plaintiff's subpoena requests are relevant, proportional to this case and narrowly tailored in content and time.

## CONCLUSION

For the foregoing reasons, the plaintiff's motion to compel SAP to respond to his subpoena, Docket Entry No. 128, is granted. SAP shall produce documents responsive to the plaintiff's subpoena on or before August 3, 2020.

**The Clerk of Court is directed to mail a copy of this Order to the plaintiff.**

Dated: New York, New York
July 27, 2020                           SO ORDERED:

                                                _Kevin Nathaniel Fox_
                                                KEVIN NATHANIEL FOX
                                                UNITED STATES MAGISTRATE JUDGE