UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------X
PETER RINALDI,                              :
                              Plaintiff,    :
                                            :
              -against-                     :        19 Civ. 424 (LGS)
                                            :
NICE, LTD., et al.,                         :        OPINION & ORDER
                              Defendants.   :
---------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

      Defendants NICE, Ltd., NICE Systems, Inc., Actimize, Barak Eilam, Paul Mills,

Christine Bonamarte and Richard Malish move for summary judgment on pro se Plaintiff Peter

Rinaldi's claims that Defendants (1) discriminated against him in violation of the Age

Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.* ("ADEA"), the New York

State Human Rights Law, Executive Law section 290 *et seq.* ("NYSHRL") and the New York

City Administrative Code section 8-101 *et seq.* ("NYCHRL"); and (2) failed to pay certain

incentive-based wages in violation of the New York State Labor Law ("NYLL") sections 191-c

and 193.[1]  For the following reasons, the motion is granted.

## I.    BACKGROUND

      The instant claims arise out of the termination of Plaintiff's employment on November

30, 2018.  Plaintiff was formerly employed as a Presales Consultant with Actimize, a provider of

financial crime, risk and compliance solutions for financial institutions and government

regulators, and/or Actimize's parent companies NICE Systems and NICE Ltd.  Plaintiff was

hired in April 2017, following an interview with Paul Mills, the Presales Director of Actimize.

---

[1] Defendants' motion is one for *partial* summary judgment, as Defendants do not move for
summary judgment on other claims alleged in the Amended Complaint.  This issue is discussed
in the "Procedural History" section.

As a Presales Consultant, Plaintiff communicated with sales and product management, generally serving as a go-between for the sales force and product team.  His responsibilities included engaging with Actimize's sales prospects and delivering product presentations to technical and management personnel.  During his employment, Plaintiff reported to Mills.  Plaintiff's offer letter states that his employment was based in Hoboken, New Jersey, and Plaintiff worked in the Hoboken office until he was discharged.  Plaintiff testified that he also worked from home in New York City, after verbally asking Mills for permission, but Plaintiff could not recall how many times he sought permission, how many days he worked from home or whether he asked for any regular arrangement.

### A.  Plaintiff's Work Performance and September 2018 Performance Review

On September 11, 2017, Mills met with Plaintiff in connection with a performance review process called "Connect2Grow."  For the Connect2Grow meeting, Plaintiff completed a self-evaluation form, which included sections for a manager's comments and performance ratings and an overall summary.  Mills' comments in the 2017 Connect2Grow form reflected Plaintiff's good progress since joining the team in April.

In September 2018, Plaintiff worked on two sales opportunities with financial services companies.  Mills selected Plaintiff as the lead Presales Consultant for one of the projects.  Defendants proffered e-mail evidence purporting to show that Plaintiff's performance on these projects was substandard.  Plaintiff denies that the evidence relates to Plaintiff and generally alleges that his performance did not deteriorate in 2018 as contended.

On September 18, 2018, Mills met with Plaintiff for the 2018 Connect2Grow review.  In the 2018 Connect2Grow form, Mills identified areas of improvement for Plaintiff, stating that Plaintiff "needs to become more connected to [certain] opportunities so that there is more

collaboration with the sales execs to help drive more deals."  Mills also wrote that they discussed how Plaintiff "needs to be more proactive in how he gets involved in sales opportunities such that he can add greater value to the team," and concluded that, "[t]he collaboration, feedback and assistance level needs to increase so that [Plaintiff] is able to add this necessary value to the team."  In the manager's summary section, Mills reiterated that Plaintiff "needs to be seen more of a trusted adviser," and described that they discussed Plaintiff "driv[ing] the weekly 1:1's with [Mills] . . . so that [Mills] [could] provide on-going feedback to help push what is needed from [Plaintiff] to better collaborate and help drive sales opportunities."

### B.  Following the September 2018 Performance Review

Following the 2018 Connect2Grow meeting, a series of incidents led Mills to believe Plaintiff was unresponsive, unengaged and could not be relied on.  First, on September 25, 2018, Mills requested that his presales team be present in the office at the end of the quarter to "show reinforcement to the sales team."  Plaintiff responded that he requested and received approval for vacation that day, though Mills explained that Plaintiff's request had not been made for that day.  Second, on October 8, 2018, Mills e-mailed Plaintiff requesting that he call him, as Mills believed Plaintiff did not appear for a scheduled one-on-one meeting.  Plaintiff contends that Mills missed the meeting.  Plaintiff did not respond until the next day, and Mills replied, "I thought we had an agreement from the [Connect2Grow] that you would proactively drive the weekly 1:1 process."  Third, later in October 2018, Plaintiff assisted with a potential sales opportunity with ScotiaBank and was responsible for responding to the Request for Proposal ("RFP"), which included approximately 500 questions on an online system.  The answers to the RFP were lost, leading Mills to ask Plaintiff "[a]re you saying that you did not save a backup of an RFP for 500 questions?"  Plaintiff contends that the answers were intended to be saved on

ScotiaBank's cloud server only.  The same day, Mills e-mailed Christine Bonamarte, the Human Resources Director.  Mills wrote, "I would like to sync with you with respect to our previous conversations regarding [Plaintiff].  There are some recent events that have help[ed] accelerate my decision and I would like to put a course of action in place."

### C.  November 2018 Termination Meeting

On November 30, 2018, Mills and Bonamarte met with Plaintiff at the Hoboken office to inform him that they decided to discharge him.  Plaintiff testified that Mills stated, "This is not working out.  This has been a hard decision. . . . You're being terminated."  After Plaintiff asked why, Mills responded, "You're not fitting in like -- you're not catching on like [Nikita Pentchoukov], and you're just not fitting in."  Pentchoukov was hired as a Presales Consultant earlier that year in March 2018, when he was twenty-five years old.  When Plaintiff began his employment in April 2017, he was forty-two years old, and other employees in his role ranged from twenty-seven- to sixty-two-years-old.  By the time Plaintiff was discharged, he was forty-three years old.  At that time, Actimize employed four Presales Consultants who were older than Plaintiff.  Plaintiff contends that three of these employees were subsequently terminated or "pushed out."

### D.  Sales Incentives

According to the verified Amended Complaint, Plaintiff seeks payments of commissions for deals that "may have closed in [December] 2018," which Defendants allegedly avoided paying by discharging Plaintiff after they realized they would not be busy with sales in the last quarter of 2018.  At his deposition, Plaintiff explained that the team "shared in pursuit of sales quotas," and that he should have been paid "the whole quota for the year," or "the sales number that the shared team was trying to pursue."

Plaintiff's employment offer letter reflects that he was "eligible to participate in the Company's [defined as Actimize, Inc.] sales commission plan [the "Sales Incentive Plan"] as in effect from time to time."  Plaintiff reviewed and acknowledged receipt of the Sales Incentive Plan in effect in 2018, which superseded the 2017 Sales Incentive Plan.  The 2018 Sales Incentive Plan states, "If a Participant's employment ends for any reason, then participation in the Plan will terminate as of the last day of employment," and also, "For the avoidance of doubt, Participants shall not earn any Incentives or Bonuses following termination from an Employer."

## II.    PROCEDURAL HISTORY

This action was removed from state court on January 15, 2019.  At the May 23, 2019, initial pretrial conference, the parties discussed Defendants' proposed motion to dismiss. Defendants agreed to hold in abeyance the proposed motion to dismiss pending mediation, and in the meantime, discovery was limited to the age discrimination and unpaid incentive claims. Defendants did not file any motion to dismiss.  On March 16, 2020, Defendants moved for summary judgment on the age discrimination and unpaid incentive claims.

Defendants did not move for summary judgment on the claims alleging retaliation in violation of the NYLL, the 2010 Dodd Frank-Wall Street Reform and Consumer Protection Act and the Sarbanes-Oxley Act of 2002.  Rather, in their memorandum of law, Defendants requested that the Court "formally dismiss" these claims, since the Court did not allow discovery as to these claims following the parties' initial pretrial conference.  The Court never adjudicated any motion to dismiss.  Although "[t]he district court has the power to dismiss a complaint *sua sponte* for failure to state a claim," it is required that "the plaintiff is given notice and an opportunity to be heard."  *Wachtler v. Cnty. of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994) (emphasis added) (internal quotation marks omitted) (notice satisfied where the plaintiff was

aware Defendants were moving to dismiss or for summary judgment and the plaintiff was allowed to respond to the motions).  Accordingly, Defendants shall file any motion to dismiss and Plaintiff shall respond as provided at the end of this Opinion.

## III.   STANDARD

Summary judgment is appropriate where the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  In evaluating a motion for summary judgment, a court must "constru[e] the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences and resolv[e] all ambiguities in its favor."  *Wagner v. Chiari & Ilecki, LLP*, 973 F.3d 154, 164 (2d Cir. 2020) (internal quotation marks omitted).  When the movant properly supports its motion with evidentiary materials, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A).  "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  *Fed. Trade Comm'n v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019).  "Only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment."  *Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013); *accord Starr Indem. & Liab. Co. v. Brightstar Corp.*, 388 F. Supp. 3d 304, 323 (S.D.N.Y. 2019), *aff'd*, 828 F. App'x 84 (2d Cir. 2020).

Plaintiff's submissions include unsupported and conclusory statements.  Under applicable law, those statements do not create a factual dispute necessary to overcome a summary judgment

motion. *Cf. Anderson*, 477 U.S. at 248 ("[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of [her] pleading, but must set forth specific facts showing that there is a genuine issue for trial." (internal quotation marks, citations, and alterations omitted)).  Accordingly, this decision considers only those facts supported by the record, which includes Plaintiff's affidavit in support of his opposition and his verified Amended Complaint to the extent they are based on Plaintiff's personal knowledge and meet the other requirements for an affidavit under Federal Rule of Civil Procedure 56(e).  *See Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) (a verified complaint is "to be treated as an affidavit for summary judgment purposes" when "it meets the other requirements for an affidavit under Rule 56(e)"); *accord Parker v. Fantasia*, 425 F. Supp. 3d 171, 176 n.1 (S.D.N.Y. 2019).

## IV.   DISCUSSION

### A.  Discrimination in Violation of the ADEA and the NYSHRL

Defendants move for summary judgment on Plaintiff's claims under the ADEA and the NYSHRL.  Summary judgment is granted because Plaintiff has not shown that a reasonable jury could find that Defendants' nondiscriminatory reasons for discharging Plaintiff were pretextual.

The ADEA provides in relevant part that "[i]t shall be unlawful for an employer to . . . discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  The NYSHRL contains a similar provision.  *See* N.Y. Exec. Law § 296(a).  In the Second Circuit, claims for age discrimination in violation of the ADEA and the NYSHRL are assessed under the *McDonnell Douglas* burden-shifting framework, as modified by the Supreme Court in *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009).  *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) (citing *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792, 802-03 (1973)); *accord Shipkevich v. New York & Presbyterian Hosp.*, No. 16 Civ. 9630, 2020 WL 5796202, at *2 (S.D.N.Y. Sept. 29, 2020).  Under *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a prima facie case of discrimination.  411 U.S. at 802.  If the plaintiff demonstrates a prima facie case of discrimination, the burden shifts to the defendant to articulate "some legitimate, nondiscriminatory reason" for the adverse employment action.  *Id.*  Once such a reason is provided, the plaintiff must show, by a preponderance of the evidence, that age was the "'but-for' cause of the challenged adverse employment action and not just a contributing or motivating factor."  *Gorzynski*, 596 F.3d at 106 (quoting *Gross*, 557 U.S. at 180) (internal quotation marks omitted).   Although summary judgment must be granted with caution in employment discrimination actions "where intent is genuinely in issue, . . . summary judgment remains available to reject discrimination claims in cases lacking genuine issues of material fact" supported by the evidence.  *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 40 (2d Cir. 1994); *accord Terpstra v. Shoprite Supermarket, Inc.*, No. 17 Civ. 6840, 2019 WL 3338267, at *4 (S.D.N.Y. July 25, 2019), *appeal dismissed*, No. 19-2570 (2d Cir. Dec. 2, 2019).

### 1.   Plaintiff's Prima Facie Case

Plaintiff has established a prima facie case of discrimination.  To establish a prima facie case, a plaintiff must show "(1) that [he] was within the protected age group, (2) that [he] was qualified for the position, (3) that [he] experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination."  *Gorzynski*, 596 F.3d at 107.  The parties dispute only whether Plaintiff has identified evidence giving rise to an inference of discrimination under the fourth element of the prima facie test.

Plaintiff offers three arguments in support of an inference of age discrimination.  First, Plaintiff alleges that when he was discharged, he was told that he "did not catch on like the younger employee [Pentchoukov]," who was in his mid-twenties and hired earlier that year.  At Plaintiff's deposition and in his declaration filed in support of his opposition to Defendants' motion for summary judgment, Plaintiff reiterates that he was compared to Pentchoukov and told that "it was not a fit" and that he did not "catch on" like Pentchoukov.  Defendants assert that this statement is insufficient to establish discriminatory intent.

In determining whether a remark is probative, courts consider four factors: "(1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)." *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010); *accord Clark v. Jewish Childcare Ass'n, Inc.*, 96 F. Supp. 3d 237, 252 (S.D.N.Y. 2015).  Here, the content of the remarks is not directly age-related; but drawing all inferences in favor of Plaintiff as required, one might infer that the comments were age-related because Pentchoukov was a younger employee than Plaintiff.  Because the three other factors (factors 1, 2 and 4) weigh in favor of Plaintiff and "none of the factors should be regarded as dispositive," these remarks are sufficient to satisfy Plaintiff's minimal burden at the prima facie stage.  *See Clark*, 96 F. Supp. 3d at 254.

Plaintiff's remaining two arguments do not support an inference of discrimination. Plaintiff argues that Pentchoukov was hired to eventually replace him.  A plaintiff's replacement by a "significantly younger person" is sufficient to establish an inference of age discrimination. *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996); *accord Carlton v.*

*Mystic Transp., Inc.*, 202 F.3d 129, 135 (2d Cir. 2000).  But the evidence does not suggest that Pentchoukov was hired to replace Plaintiff.  *See Farzan v. Wells Fargo Bank, N.A.*, No. 12 Civ. 1217, 2013 WL 6231615, at *18 (S.D.N.Y. Dec. 2, 2013), *aff'd sub nom. Farzan v. Genesis 10*, 619 F. App'x 15 (2d Cir. 2015).  Pentchoukov was hired eight months before Plaintiff's discharge, and there is no evidence that he assumed Plaintiff's responsibilities or projects.

Plaintiff's third argument also does not support an inference of discrimination.  Plaintiff argues that three out of the five employees on Mills' team who were older than Plaintiff were also fired or "pushed out" after he left.  "A showing that employees who are members of a protected group are categorically targeted for termination, while employees outside of that group are not, is ordinarily sufficient to make out a prima face case."  *Farzan*, 2013 WL 6231615, at *19 (citing *Windham v. Time Warner, Inc.*, 275 F.3d 179, 188 (2d Cir. 2001)).  Assuming Plaintiff's allegation was properly supported, it does not lead to a reasonable inference of discrimination, because Plaintiff has not established the rate at which employees not within this protected group were discharged; the record contains no information about the number of younger employees on the team and whether or not they also were "pushed out."  *See Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 515 (S.D.N.Y. 2010) (no inference of discrimination where the plaintiff failed to "even claim that the rate of termination for older employees . . . exceeded the rate of termination for younger employees."); *see cf. Maresco v. Evans Chemetics*, 964 F.2d 106, 113 (2d Cir. 1992) ("The decision to terminate two of the three older accounting employees, *and none of the twenty younger employees*, presents circumstances which give rise to an inference sufficient to withstand a motion for summary judgment . . . .") (emphasis added)).

Defendants proffer three arguments, supported by undisputed evidence, which weaken but do not negate Plaintiff's prima facie case.  First, "[b]eing in the protected class when hired

10

undermines any inference of age discrimination." *See Baguer v. Spanish Broad. System, Inc.*, No. 04 Civ. 8393, 2010 WL 2813632, at *14 (S.D.N.Y. July 12, 2010), *aff'd*, 423 F. App'x 102 (2d Cir. 2011)).  Plaintiff was forty-two years old when he was hired and forty-three when he was fired.  Second, an inference of discrimination is also undermined when the actor who decided to discharge the plaintiff was within the protected class.  *See id.* at *15.  Mills, who recommended terminating Plaintiff, was forty-nine at the time of the decision.  Third, "when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute . . . an invidious motivation that would be inconsistent with the decision to hire." *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir. 1997); *accord Stewart v. Fashion Inst. of Tech.*, No. 18 Civ. 12297, 2020 WL 6712267, at *10 (S.D.N.Y. Nov. 16, 2020).  Here, Mills was involved in both hiring and firing Plaintiff.  These three arguments suggest that age discrimination was unlikely.  However, because Plaintiff has offered some evidence that leads to an inference of discrimination, a weak prima facie case has been shown.

### 2. Legitimate, Nondiscriminatory Reason

As Plaintiff has established a prima facie case of age discrimination, the burden shifts to Defendants to articulate a "legitimate, nondiscriminatory reason" for discharging Plaintiff.  Defendants have met that burden.

Defendants maintain that Plaintiff was discharged for substandard work performance in late 2018.  Plaintiff disputes aspects of Defendants' account, including with regard to his work on sales opportunities with financial services companies in September 2018.  However, Defendant proffers undisputed evidence that, following the September 2018 Connect2Grow meeting, work-related incidents led to Plaintiff's termination.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (At the second step of the *McDonnell Douglas* analysis, the employer "must clearly set forth, through the introduction of admissible evidence, reasons for its

actions which, *if believed by the trier of fact*, would support a finding that unlawful discrimination was not the cause of the employment action." (emphasis in original) (internal quotation marks omitted); *accord Dominick v. Newburgh Enlarged City Sch. Dist.*, No. 16 Civ. 5136, 2019 WL 481839, at *6 (S.D.N.Y. Feb. 6, 2019).  Defendants explained that Plaintiff was discharged because Mills viewed the incidents -- related to the close of the sales quarter, the October one-on-one meeting and the ScotiaBank RFP -- as performance issues and evidence of Plaintiff's lack of engagement and initiative.  Defendants have thus articulated a legitimate and nondiscriminatory business reason for discharging Plaintiff.

### 3. Pretext

Because Defendants have satisfied their burden, the burden shifts back to Plaintiff to show that Defendants' legitimate, nondiscriminatory reason for Plaintiff's termination was pretextual and that Plaintiff's age was the "but-for" cause of his termination.  Plaintiff has not satisfied this burden.

The record contains no evidence sufficient to create a factual dispute as to whether Defendants' reason for terminating Plaintiff was pretextual or whether Plaintiff's age was the "but-for" cause of his termination.  A plaintiff may establish pretext and but-for causation by demonstrating "weaknesses, implausibilities, inconsistencies, or contradictions" in Defendants' proffered legitimate, nondiscriminatory reason." *Todoverto v. McDonald*, No. 13 Civ. 4922, 2016 WL 3826281, at *7 (S.D.N.Y. July 7, 2016).  To determine whether a plaintiff has met her burden at this third step of the *McDonnell Douglas* analysis, a court should use a "case-by-case" approach, evaluating "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports [or undermines] the employer's case." *James v. New York Racing Ass'n*, 233 F.3d 149, 156 (2d Cir.

2000) (alteration in original) (quoting *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 148-49 (2000)).

The statement that Plaintiff did not "catch on" like Pentchoukov, the younger employee, is not expressly age-based.  While the statement is sufficient to establish a weak prima facie case, it does not create a triable issue of fact as to whether Defendants' legitimate reason for terminating Plaintiff's employment was pretext for discrimination.  *See, e.g.*, *Clark*, 96 F. Supp. 3d at 257 (comments that do not suggest discriminatory animus sufficient to demonstrate a weak prima facie case did not create a genuine issue of fact as to pretext); *Fried v. LVI Servs., Inc.*, 500 F. App'x 39, 41 (2d Cir. 2012) (summary order) (remark expressly related to age made by the employer's CEO six weeks prior to termination insufficient to meet the burden to show more than possible age bias "when considered against the overwhelming documentary evidence supporting [the employer's] articulated non-discriminatory reason for terminating [the plaintiff]").  The record contains no other evidence that Plaintiff's termination was motivated by age discrimination sufficient to overcome Defendants' showing that Plaintiff was discharged for a legitimate, non-discriminatory reason, or sufficient to show that but for Plaintiff's age, he would not have been terminated.

In contending otherwise, Plaintiff makes the following additional arguments, other than those discussed in connection with his prima facie case:  (1) two versions of the 2018 Connect2Grow evaluation were produced in discovery, only one of which states that Plaintiff was not "on track" with meeting his yearly goals; (2) Plaintiff was never put on a performance improvement plan described in the Employee Handbook, and (3) the work-related incidents were either not serious or not his fault.  First, Plaintiff points out the discrepancy between the versions of the Connect2Grow evaluations to suggest that Defendants modified the performance

evaluation; however, this inconsistency does not create an issue of material fact as to pretext. The undisputed version of the 2018 Connect2Grow evaluation -- without the "on track" comment -- includes Mill's comments regarding areas of improvement, consistent with Defendants' reasons for termination.[2]  The disputed second form adds that Plaintiff was not "on track" to achieve his yearly objectives; however, the addition of this statement is not the sort of "shifting and . . . inconsistent explanation[]" by employers that can raise an inference of pretext. *See Bourara v. New York Hotel Trades Council & Hotel Ass'n of New York City, Inc. Employee Benefit Funds*, No. 17 Civ. 7895, 2020 WL 5209779, at *13 (S.D.N.Y. Sept. 1, 2020) (quotation marks omitted).

As to Plaintiff's second argument, the record does not show that Defendants violated their policy when Plaintiff was discharged, as the Employee Handbook does not require the corrective action process, as Plaintiff contends; the Handbook states that "depending upon management's evaluation of a particular situation, a supervisor may skip any step . . . with the prior approval of the Human Resources [D]epartment."  As to Plaintiff's remaining arguments that the work-related incidents were either not serious or not his fault, the ADEA does not hand federal courts a "roving commission to review business judgments," *see Montana v. First Fed. Sav. & Loan Ass'n of Rochester*, 869 F.2d 100, 106 (2d Cir. 1989), and "[a] plaintiff's subjective disagreement" with a supervisor's review of performance-related issues is "not a viable basis for a discrimination claim." *Valentine v. Standard & Poor's*, 50 F. Supp. 2d 262, 284 (S.D.N.Y. 1999), *aff'd*, 205 F.3d 1327 (2d Cir. 2000); *accord Milord-Francois v. New York State Office of Medicaid Inspector Gen.*, No. 19 Civ. 00179, 2020 WL 5659438, at *15 (S.D.N.Y. Sept. 23,

---

[2] These forms were the subject of discovery disputes, involving the provider of Actimize's HR software, non-party SAP SuccessFactors ("SAP").  SAP filed two declarations explaining that the form containing the "on track" comment is a "manager view" version of Plaintiff's evaluation and that the evaluation was not modified.

2020).  Plaintiff's view of the work-related incidents is not mutually exclusive with Mills' good faith belief that Plaintiff was not proactive, responsive or engaged.

Further, even assuming that Plaintiff could establish pretext, he cannot demonstrate that discrimination was the "but-for" cause of his discharge.  Plaintiff conjectures that there were other reasons for his discharge, including because he often questioned the effectiveness of the software that was sold.  This admission, stated in the verified Complaint and restated in Plaintiff's memorandum of law in opposition, undermines any claim that Plaintiff's age was the "but-for" cause of his discharge.  *See Benyard v. White Plains Hosp. Med. Ctr.*, No. 12 Civ. 1810, 2013 WL 6003733, at *4 (S.D.N.Y. Nov. 12, 2013) ("As mixed-motive discrimination claims are not actionable under the ADEA, any alleged consideration of Plaintiff's tenure or salary is insufficient to raise a triable issue of fact concerning whether Defendants' asserted reasons for Plaintiff's termination were a pretext for age discrimination.") (internal citation omitted).

In sum, Defendants have presented a nondiscriminatory reason for the decision to terminate Plaintiff, Plaintiff's proof of his prima facie case is weak, and there is no evidence to show that Defendants' reason for terminating Plaintiff was pretextual.  No reasonable jury could find, based on the evidence, that Plaintiff would not have been terminated but for his age.  Summary judgment on the ADEA and NYSHRL claims is granted.

### B.  Discrimination in Violation of the NYCHRL

Defendants' motion for summary judgment on Plaintiff's claim of age discrimination in violation of the NYCHRL is granted because the alleged discrimination impacted Plaintiff outside of New York City (the "City").[3]  Although the statute does not directly define the

---

[3] Defendants argue that the NYSHRL claim fails for the same reason as the NYCHRL claim, because the discriminatory act occurred outside of New York.  This argument is not addressed,

geographic scope of its coverage, New York courts have interpreted the NYCHRL as limiting the applicability of its protections to preventing discrimination within the City. *See Levy v. City Comm'n on Human Rights*, 651 N.E.2d 1264, 1265-66 (N.Y. 1995) (the "Administrative Code of the City of New York vests in the New York City Commission on Human Rights the authority and jurisdiction to eliminate and prevent discrimination within the City of New York"). The New York Court of Appeals limited the territorial jurisdiction of the NYCHRL to cases brought by *non-residents* where discriminatory conduct had an "impact" within the City. *See Hoffman v. Parade Publications*, 933 N.E.2d 744, 747 (N.Y. 2010). Courts applying this "impact" requirement to NYCHRL claims brought by City *residents* have found that the location of the plaintiff's workplace is where the impact of discriminatory conduct occurred. *See, e.g.*, *Huan Wang v. Air China Ltd.*, No. 17 Civ. 6662, 2020 WL 1140458, at *17-18 (E.D.N.Y. Mar. 9, 2020) ("[T]he relevant location for purposes of the impact analysis is Plaintiff's place of employment, not her residence" when the alleged discriminatory act was termination.); *Mejia v. White Plains Self Storage Corp.*, No. 18 Civ. 12189, 2020 WL 247995, at *4 (S.D.N.Y. Jan. 16, 2020) (dismissing NYCHRL claim on a motion to dismiss because City resident plaintiff alleged discrimination that occurred in workplace outside of the City); *Robles v. Cox & Co.*, 841 F. Supp. 2d 615, 624 (E.D.N.Y. 2012) ("Holding an employer liable under the NYCHRL for a discriminatory decision to terminate made in [the City] based solely on its employees['] chosen residence would lead to the type of inconsistent and arbitrary results the New York Court of Appeals in *Hoffman* sought to avoid." (quotation marks omitted)); *Ortiz v. Haier Am. Trading, LLC*, 2011 N.Y. Slip Op. 31414U, 2011 WL 2283771 (Sup. Ct. 2011) (assessing location of the

_____

as the NYSHRL claim fails on the merits for the same reason as the ADEA claim as discussed above.

"impact of the discriminatory conduct or decision," without regard to plaintiff's alleged City residence or the defendant's alleged principal place of business).

Here, Plaintiff does not dispute that he worked in the New Jersey office until he was discharged and that the meeting at which Plaintiff was fired occurred at that office.  Plaintiff's residence in the City is insufficient to establish that the impact of the alleged discrimination occurred in the City.  *See McKinney v. Tanner*, No. 18 Civ. 10548, 2019 WL 3067116, at *2 (S.D.N.Y. July 12, 2019) (dismissing NYCHRL claim on a motion to dismiss because the plaintiff, a "New York City resident, allege[d] that the discriminatory conduct occurred . . . outside of [the City]"); *Kearse v. ATC Healthcare Servs.*, No. 12 Civ. 233, 2013 WL 1496951, at *2 (S.D.N.Y. Apr. 8, 2013) ("Even if plaintiff was a resident of New York City when the alleged discrimination occurred, this fact would be 'irrelevant to the impact analysis, which 'confines the protections of the NYCHRL to those who are meant to be protected--those who work in the city.'" (quoting *Hoffman*, 933 N.E.2d at 747)).  Because the alleged discrimination had its impact in New Jersey, where Plaintiff worked, and not in the City, Plaintiff's age discrimination claim cannot be brought under the NYCHRL.

In opposition, Plaintiff (1) disputes the location of his employer, (2) points out a choice-of-law provision in an employee confidentiality and non-solicitation agreement and (3) alleges that he also worked from home in New York City.  Plaintiff's first two arguments are unpersuasive, as "those who are meant to be protected" by the NYCHRL are "those who work in the [C]ity."  *Hoffman*, 933 N.E.2d at 747.  The discriminatory impact occurred where Plaintiff worked and where the alleged discrimination took place, *i.e.*, in New Jersey.  Plaintiff's third argument is unsupported by the record.  The evidence does not show that Plaintiff regularly worked in New York City, whether from home or elsewhere, such that his termination could be

said to have had an impact within the City.  When deposed, Plaintiff could not recall whether he

had asked for any regular arrangement to work from home or how frequently he had worked

from home in 2017 and 2018.  *Accord E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 865

(S.D.N.Y. 2013) ("[P]ointing to a few occasions in which a claimant performed some work in

New York and evidence that certain adverse actions were executed from New York is

insufficient to show that the alleged discriminatory events had an impact in New York" for

NYSHRL and NYCHRL claims).

       Even if the NYCHRL applied, Plaintiff's claim would not survive summary judgment

because, based on the evidence, a reasonable jury could not conclude that Plaintiff had been

discharged, even in part, for discriminatory reasons.  The NYCHRL is construed "broadly in

favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible."

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013); *accord*

*Maynard v. Montefiore Med. Ctr.*, No. 18 Civ. 8877, 2021 WL 396700, at *8 (S.D.N.Y. Feb. 4,

2021).  The Second Circuit has clarified that "[t]he employer may present evidence of its

legitimate, non-discriminatory motives to show the conduct was not caused by discrimination,

but it is entitled to summary judgment on this basis only if the record establishes as a matter of

law that 'discrimination play[ed] no role' in its actions."  *Mihalik*, 715 F. 3d at 110 n.8 (quoting

*Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 40 n.27 (1st Dep't 2009)).[4]  The only evidence

of possible discriminatory intent is Mill's statement.  A reasonable jury could not conclude from

---

[4] The NYCHRL establishes that it is an unlawful discriminatory practice for an employer
"because of the actual or perceived age . . . of any person, . . . to discriminate against such person
in compensation or in terms, conditions, or privileges of employment."  N.Y.C. Admin. Code
§ 8–107(1)(a).  As amended, the NYCHRL provides that it "shall be construed liberally for the
accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether
federal or New York State civil and human rights laws, including those laws with provisions
comparably-worded to provisions of this title, have been so construed."  *Id.* § 8–130.

this evidence alone that Defendants terminated Plaintiff's employment for a discriminatory

reason.  *See Rimpel v. AdvantageCare Physicians, P.C.*, No. 17 Civ. 6867, 2020 WL 5517281, at

*8 (E.D.N.Y. Sept. 14, 2020) (alleged remarks sufficient to bolster finding of prima facie case

but insufficient to establish that age discrimination motivated Defendant's decision to terminate

Plaintiff's employment).  Summary judgment is granted on the NYCHRL claim.

### C.  NYLL Claim

Summary judgment is granted on Plaintiff's claim for unpaid incentives under New York

Labor Law.  The record contains insufficient evidence that Plaintiff is owed any unpaid wages or

incentives.  Plaintiff alleges that he is owed unpaid incentives accruing after his termination

under his employer's sales incentive plan.  That assertion is incorrect because the 2018 Sales

Incentive Plan in effect during the year of Plaintiff's termination states, "If a Participant's

employment ends for any reason, then participation in the Plan will terminate as of the last day of

employment," and also states that "Participants shall not earn any Incentives or Bonuses

following termination from [Actimize]."

Plaintiff also did not earn any incentives under the plan *before* his termination.  He

testified that he could not identify a particular deal on which he should have been paid an

incentive payment, stating generally that he was owed an amount in connection with his team's

"pursuit of sales quotas." When asked to clarify, Plaintiff explained that he was owed incentives

for the "sales number that the shared team was trying to pursue."  This is insufficient for a

reasonable jury to conclude that Plaintiff is owed an unpaid incentive payment.  Summary

judgment is granted on the NYLL claim.

## V.  CONCLUSION

Defendant's motion for summary judgment on Plaintiff's age discrimination claims in

violation of ADEA, NYSHRL, NYCHRL and unpaid wages claim in violation of NYLL is

GRANTED.  For the reasons explained above, Defendants shall file any motion to dismiss the

remaining claims by March 24, 2021.  The memorandum of law in support of the motion shall

not exceed ten (10) pages.  By April 7, 2021 Plaintiff may, but need not, file an opposition, not to

exceed ten (10) pages.  No reply shall be filed unless requested.

     The Clerk of Court is respectfully directed to close Dkt. No. 114 and to mail a copy of

this Opinion and Order to pro se Plaintiff.

Dated:  March 4, 2021
     New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE